**Al STAR et al.**
v.
**David PRELLER et al.**
Civ. No. 72-27-Y.

United States District Court,
D. Maryland.
May 14, 1974.

**1094**

William E. Seekford, Towson, Md., for plaintiffs.

Francis B. Burch, Atty. Gen., State of Maryland, and Thomas G. Young, Asst. Atty. Gen., for defendants.

Before WINTER, Circuit Judge, YOUNG and BLAIR, District Judges.

JOSEPH H. YOUNG, District Judge.

The petitioner is the owner of two establishments in the City of Baltimore in which are operated a number of so-called "peep shows." Peep shows are individual viewing machines, showing portions of adult motion pictures and activated by the frequent deposit of coins in the machine. On three different occasions in late 1971 and early 1972, the two businesses were raided by officers of the Baltimore City Police Department acting pursuant to a warrant. The manager was arrested for failure to have submitted the peep show films to the Maryland State Board of Censors for review and licensing as required by the Maryland Code Anno. Art. 66A §§ 1–26. A quantity of unlicensed films were seized, and the establishments were closed down temporarily until new films were obtained.

Petitioner thereafter sought the convening of a three-judge court to enjoin the enforcement of Article 66A on the grounds of its alleged unconstitutionality.[1] The Court ruled adversely to petitioner, see Star v. Preller, 352 F. Supp. 530 (D.Md.1973), and he appealed to the Supreme Court under 28 U.S.C. § 1253. The Supreme Court remanded the case for reconsideration, 413 U.S. 905, 93 S.Ct. 3054, 37 L.Ed.2d 1016 in light of its recent decisions in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Paris Adult Theater I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L. Ed.2d 757 (1973); Alexander v. Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed. 2d 993 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492

---

1. Star himself has never been arrested or prosecuted in connection with these incidents. Accordingly, the Court was not faced with a possible federal intrusion into a state criminal prosecution. See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).

(1973); United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); United States v. 12 200-Foot Reels of Super 8mm Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973). *See* Star v. Preller, *supra.*

It must be noted at the outset that the original opinion in Star v. Preller did not deal with the possible obscenity of the films seized. The films were seized for their lack of a Censor Board license, and the films could have been innocuous so far as this Court is aware. At no point in the proceedings have the films been viewed. The only mention of the now obsolete test for obscenity established by Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) and Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), is in footnote 10 of Star v. Preller, *supra* at 537, where the Court noted the adoption of this test by the Maryland Court of Appeals in Sanza v. Maryland State Board of Movie Censors, 245 Md. 319, 226 A.2d 317 (1966).

What was at issue was whether the statutory scheme for the pre-exhibition review and licensing of motion pictures provided by Article 66A violated petitioner's constitutional rights. In particular, the Court was concerned with the question of whether the 1965 amendments to Article 66A had remedied the defects which had led the Supreme Court to find the statute unconstitutional in Freedman v. Maryland, 380 U. S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). The Court dealt with a multitude of constitutional claims, and sustained the constitutional validity of the statute.

By contrast with the pre-1965 statute, the amended statute provides for a prompt judicial determination of obscenity by a court of equity after an adversary hearing before final denial of a license by the Censor Board. Furthermore, the Board now must bear the burden of proof at all stages of the proceeding.[2] We held that this procedure complied with the requirements of Freedman v. Maryland, *supra.* The provision for a hearing before an equity court without a jury was specifically approved in reliance upon Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957).

No right to privacy was found to attach to the patrons of the two establishments even though peep shows were generally viewed in relative privacy. Although a right to view obscene materials in the privacy of one's own home has been recognized, see Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), *Cf.* Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the extension of such a right to the patrons of a business open to the public would be unwarranted. The State has a valid interest in regulating the public, commercial display of films so long as adequate procedural safeguards of constitutional rights are provided.

The warrants by which the raids were authorized were found to have issued upon probable cause.[3] There was no necessity for a prior viewing of the films as the warrants were directed to the display of films without a Censor Board license.

The petitioner raised numerous other constitutional claims which were not in

---

2. The statute provides that the Censor Board must decide within five days of a film's submission whether the Board will grant or deny a license. Within three days of a denial of a license, the Board must initiate proceedings in the Circuit Court of Baltimore City for *de novo* review of the Board's decision. The exhibitor may appeal an adverse decision to the Maryland Court of Special Appeals where the case must receive priority on the judicial calendar. Further appeal to the Court of Appeals is possible by writ of certiorari. *See* Md.Code Anno., Article 66A § 19.

3. The affidavits recounted the difficulties the Censor Board had had in securing compliance with Article 66A by certain exhibitors in the Baltimore area. Upon the request of the Censor Board, the Attorney General's office investigated the situation and determined that films being shown at the two stores were not licensed.

any way affected by Miller v. California, *supra*, and its companions. The Court overruled challenges alleging that the statute was unconstitutionally vague, that it arbitrarily exempted newsreels and non-commercial showings of educational, charitable and religious films from licensing requirements, that it arbitrarily excluded some types of employees from criminal liability, that the Baltimore City Police Department lacked statutory authority to conduct the raids, that the raids were conducted in bad faith, that the licensing fees were an unreasonable burden on First Amendment rights, that criminal penalties were improper, that the members of the Censor Board were unqualified, and that the legislature could not have restricted venue to the courts of Baltimore City. *See* Star v. Preller, *supra*, at 540–544.

In Miller et al., the Supreme Court attempted to delineate the substantive and procedural guidelines which should govern the enforcement of the obscenity laws. We will consider each case in its turn.

a. Miller v. California, *supra*. The Court found it necessary to reject the three-part test for obscenity provided by Roth v. United States, *supra*, and more particularly by Memoirs v. Massachusetts, *supra*, which had proved to be unsatisfactory. The concern in *Miller* was to develop workable standards for the definition and determination of obscenity by the state legislature and by the trier of fact.

Henceforth, state statutes regulating obscene materials must be limited by the state legislature, or by an authoritative state court decision, to works depicting sexual conduct "which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political or scientific value." 413 U.S. at 24. The trier of fact must find that a work satisfies the following guidelines: (1) that the average person applying contemporary community standards would find that the work taken as a whole appeals to prurient interest; (2) that the work depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) that the work taken as a whole lacks serious literary, artistic, political or scientific value. The trier of fact is to apply a contemporary, local community standard. Although the term "local" is not explicitly defined, it seems clear that a statewide community is intended. *See, e. g.,* Kaplan v. California, *supra*. The Court went on to note several examples of material which a state legislature or court could properly define as obscene.

b. Paris Adult Theater I v. Slaton, *supra*. This case was remanded to the state court of Georgia for reconsideration in light of the new standards enunciated in *Miller*. However, the Court indicated its approval of the procedure in Georgia whereby a civil injunction could be secured against the showing of obscene materials after a full adversary hearing and final determination of obscenity by the state supreme court.

The Court also held that Stanley v. Georgia, *supra,* and Griswold v. Connecticut, *supra*, provided no protection for the commercial distribution of obscene materials, even to consenting adults. Neither created a zone of privacy that follows a consumer of obscene materials, but are based upon the traditional feeling that a "man's home is his castle."

c. Heller v. New York, *supra*. A judge of the New York State Criminal Court viewed a performance of an obscene film accompanied by a police inspector. Immediately after the viewing, the judge issued a warrant authorizing the police inspector to seize the films for the purpose of a criminal prosecution. The Court held that the procedure was proper since a prior adversary hearing is required only for a final restraint on display. No such hearing is required for an initial procedure if a warrant has been issued following a finding of probable cause by a neutral magistrate and if a prompt judicial determination of obscenity in an adversary

proceeding is available at the request of any interested party.

d. Roaden v. Kentucky, *supra*. A sheriff arrested the manager of a theater where the sheriff had just viewed a film which he determined to be obscene. The sheriff seized the films without a warrant on the theory that the seizure was incident to a lawful arrest. The Supreme Court held that the seizure was unlawful. The seizure of materials at least colorably protected by the First Amendment calls for a higher standard in the evaluation of reasonableness. No exigent circumstances existed in this case which would justify a warrantless seizure. Absent such circumstances, a seizure could take place only when a magistrate has had an opportunity to "focus searchingly on the question of obscenity." *Id.* at 502, quoting Marcus v. Search Warrant, 367 U.S. 717, 732, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

e. Alexander v. Virginia, *supra*. In a one-sentence opinion the Court noted that a jury trial was not necessary to determine the obscenity of a work.

f. Kaplan v. California, *supra*. A state court finding that a book without illustrations was obscene was remanded for reconsideration in light of Miller v. California, *supra*. The Court noted that the concept of obscenity is not limited to pictorial representations, but may apply to written words alone.

g. United States v. Orito, *supra*; United States v. 12 200-Foot Reels of Super 8mm. Film, *supra*. These cases reaffirmed the power of Congress to regulate the importation or the interstate transportation of obscene materials.

Clearly the Miller v. California line of cases has substantially changed the legal structure for the regulation of obscene materials. However, the changes do not impinge upon the validity of Star v. Preller, *supra*.

Paris Adult Theater I v. Slaton, *supra*, which approved a Georgia procedure permitting a civil injunction against the showing of a film after a prior adversary hearing by the Georgia Supreme Court, gives substantial support to Star v. Preller. Despite the differences in procedures, the Maryland regulatory structure provides for prompt adversary hearings before the Circuit Court of Baltimore City and the Court of Special Appeals, before the denial of a license. As indicated by Alexander v. Virginia, *supra*, the trial before the Circuit Court for Baltimore City, an equity court, results in no constitutional defect because of the denial of a jury trial. We again affirm the constitutionality of Article 66A as to this challenge.

In Paris Adult Theater I v. Slaton, *supra*, the Court also rejected arguments based on Stanley v. Georgia, *supra*, and Griswold v. Connecticut, *supra*, that a right of privacy attaches to consenting adults viewing obscene materials in a commercial establishment. As was noted in Star v. Preller, *supra*, at 540, and in Paris Adult Theater I v. Slaton, *supra* at 66, the right of privacy was intended to protect the sanctity of the home and the family from excessive government interference, not to spread a protective cloak around all the public activities of consenting adults.

Both Heller v. New York, *supra*, and Roaden v. Kentucky, *supra*, were concerned with seizures of films after a preliminary determination that the films were obscene. By contrast, the seizure of the films in this case was authorized by warrants issued by the Supreme Bench of Baltimore City. The warrants were issued on the grounds that there was probable cause to believe that films which had not been submitted to the Censor Board for licensing were being exhibited. Thus, it was unnecessary for a neutral magistrate to view the films before issuing a warrant because there was no need to determine whether or not the films were obscene. Indeed, there has been no such determination to this day. Accordingly, the warrant procedure utilized in this case is constitutionally permissible.

In footnote 10 of Star v. Preller, *supra* at 537, this Court noted that the

three-pronged *Roth-Memoirs* test for obscenity had been incorporated into Article 66A § 6(b) by the Maryland Court of Appeals in Sanza v. Maryland State Board of Censors, *supra.* Since the Supreme Court's decision in Miller v. California, *supra,* the Maryland Court of Special Appeals has incorporated the *Miller* test for obscenity into section 6(b). *See* Ebert v. Maryland State Board of Censors, 19 Md.App. 300, 313 A.2d 536 (1973).

The petitioner has raised the argument that the Court of Special Appeals was without power to substitute the *Miller* test for the *Roth-Memoirs* test since the latter had been adopted by the Maryland Court of Appeals, the highest court of the State. As the defendant in *Ebert* failed to apply for a writ of certiorari, the Court of Appeals has had no opportunity to change the *Roth-Memoirs* test, and accordingly Maryland is now operating under a standard which is no longer constitutionally valid.

■ However, it is clear from both Dunn v. Maryland State Board of Censors, 240 Md. 249, 213 A.2d 751 (1965), and Sanza v. Maryland State Board of Censors, *supra,* that the Court of Appeals intended to limit the scope of the censorship statute to the constitutionally permissible definition of obscenity provided by the Supreme Court. "The only valid standard for disapproval of a film under the Act, therefore, is obscenity. As *Dunn* makes clear, that standard is limited to what can be deemed obscene in the constitutional sense." 245 Md. at 338, 226 A.2d at 327. Thus, the Court of Special Appeals in *Ebert* was not attempting to overrule the decisions of its superior, but was instead following the Court of Appeals' holding that the test of obscenity for the purposes of Article 66A must be the constitutionally mandated one, regardless of the current formulation of the standard.

■ Petitioner's claim that the adoption of the *Miller* standard by the Maryland courts creates an *ex post facto* situation as to him is similarly without merit. It is true that a judicial enlargement of a statute or a change in the Government's burden of proof can create an *ex post facto* situation. *See* Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1963). However, although the point continues to elude his comprehension, petitioner Star has been charged with no crime and the difficulties he has faced through enforcement of Article 66A are derived solely from his failure to submit the films for licensing, rather than from any finding of obscenity. It is, therefore, irrelevant to Star's situation that the constitutional standard for obscenity has been changed.

The Miller v. California line of cases has no bearing on the other issues raised by petitioner in Star v. Preller, *supra.*

■ Having reconsidered our earlier opinion in the light of Miller v. California, we find for the reasons set forth herein that Maryland's motion picture censorship statute, Article 66A, meets the constitutional requirements enunciated in Freedman v. Maryland, *supra,* both on its face and as applied to the plaintiff in this case. Plaintiff's request for declaratory and injunctive relief is hereby denied.

It is so decreed and ordered.