MOTION PICTURE APPEAL BOARD OF THE CITY OF CHICAGO *et al.*, Plaintiffs-Appellees, *v.* S. K. FILMS, Defendant-Appellant.

First District (5th Division)   No. 78-1

Opinion filed September 22, 1978.

218

L. Robert Artoe, of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Robert Retke, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiffs, the Motion Picture Appeal Board of the City of Chicago and its members (hereinafter "the Board"), brought this action pursuant to section 155—7.2 of the Municipal Code of Chicago, to enjoin defendant, S. K. Films, from showing a film entitled "The First Nudie Musical" in Chicago theaters to persons under the age of 18 years. Following a trial in the circuit court of Cook County, the injunction was issued and defendant appealed.

On appeal, defendant contends that: (1) the Chicago motion picture exhibition ordinance does not meet due process requirements in that the Board is not required to state its reasons for refusal of a permit; (2) the trial court committed reversible error by excluding defendant's evidence of community standards, especially by refusing to allow evidence of other films that the city had allowed to be shown to general audiences; (3) the Chicago motion picture exhibition ordinance is unconstitutional as applied; (4) the ordinance sets a standard not allowed by the Illinois supreme court; (5) it was error not to take judicial notice of the quality and reputation of the actors and actresses in the film; and (6) the decision

of the trial court was against the manifest weight of the evidence. We affirm. The pertinent facts follow.

The Chicago motion picture exhibition ordinance (Municipal Code of Chicago, ch. 155, pars. 1 through 7.4) sets out standards and procedures for the public showing of movie films. Section 155—1 of the ordinance provides that all films to be shown to audiences composed solely of persons 18 years of age or older may be exhibited without inspection or permit. It further provides that if a film is intended to be shown to the general public, it may be shown only following the issuance of a permit by the superintendent of police. Permits are granted after a written application is submitted to the superintendent of police and the film has been viewed by the superintendent or the film review section created by the ordinance. Section 155—2.

Section 155—5 states in pertinent part:

"155—5. It shall be the duty of the superintendent of police to refuse to issue such permit if the motion picture, considered as a whole, is harmful when viewed by children as defined herein.

The term 'children' means any person less than eighteen years of age.

'Harmful when viewed by children' means 'obscene when viewed by children' or 'violent when viewed by children,' as those terms are defined below."

"Obscene when viewed by children" and "violent when viewed by children" are then defined in the ordinance.

The ordinance also provides for a motion picture appeal board to review films upon the refusal of a permit and to consider the arguments of the owner, agent or exhibitor in support of the exhibition of the film. (Section 155—7.1.) If the Board affirms the refusal of the permit, it must file an action to enjoin the showing of the film to general audiences. Section 155—7.2.

Defendant applied for a permit to exhibit a motion picture entitled "The First Nudie Musical" (hereinafter "the film") to general audiences. The film was viewed on November 22, 1977, by the film review section of the Chicago Police Department, which refused to issue the permit. Defendants appealed to the Motion Picture Appeal Board. On November 25, 1977, the Board screened the film and conducted a hearing at which defendant was represented by Sidney Kaplan as its agent. The Board voted to affirm the decision denying the permit to show the film to anyone under the age of 18 years and filed its action for injunction on November 30, 1977. On December 6, 1977, the trial court held a hearing and viewed the film, which was entered into evidence.

Matthew Schoenbaum, a member of the Board, testified for plaintiffs. He is a licensed attorney who also has a master of science degree from the

Catholic University in Washington, D. C. Schoenbaum's professional experience included extensive work with children. He dealt with emotionally disturbed and delinquent children for the Children's Bureau and the Board of Education in Washington, D. C. In Chicago, he was director of court services for the Archdiocesan Holy Name Society and covered children's courts in that capacity. He was dean of the school of social work at Loyola University for 25 years, continuing his interest in children and being involved in programs concerning them. Schoenbaum's law practice also continues to keep him in contact with children's agencies.

Schoenbaum had been associated with the Board for about seven years. Prior to the amendment of the ordinance, he saw every film denied a license by the film review section, whether the movie was intended for adults or children. Since the amendment of the ordinance to concern itself with children, approximately two years prior to the hearing, he had seen 20 to 25 films per year on review to the Board.

Schoenbaum stated that the film is obscene with respect to children. He believed that the film could have a harmful impact on children because they are a vulnerable group, are not sexually adjusted and have a tendency to mimic what they see on the screen. He did not believe the movie would be obscene to adults.

On cross-examination Schoenbaum testified that the Board sees movies only upon appeal from the film review section's denial of a general audience permit. He also stated that the City of Chicago has no classifications for-films other than the unrestricted general audience and adults only categories. Questions regarding whether or not Schoenbaum had seen certain other films were objected to by the Board's counsel, and the court sustained objections to a question about whether a permit had ever been denied to a major motion picture producer. Schoenbaum also testified that the Board had overruled the film review section on several occasions although he could not specifically recall the films involved.

Schoenbaum agreed with defense counsel that one of the factors considered by the Board in its review of the instant case was that the subject matter of the film was the making of a pornographic movie. Other factors, Schoenbaum stated, were that the language was arduous and that the film contained simulated sexual intercourse, so that as a whole the film met the ordinance's "obscene when viewed by children" standard.

The first witness called by defendant was Dr. Joseph Mehr, who has a doctoral degree in clinical psychology from the Illinois Institute of Technology. Dr. Mehr served an internship at Chicago State Hospital in 1964, and currently is the chief psychologist at the Elgin Health Center. He also has a private practice, in which he sees adults, families and children. He has participated in many training workshops and seminars, including workshops involving work with children.

Dr. Mehr testified that in his opinion the film does not appeal to the prurient interest of teenagers and that it contains nothing patently offensive to teenagers. He also believed that the film would not be harmful to anyone from the age of four years on up, although someone that young would probably not understand the film. The element of humor in the film is important, he testified, and he found nothing in the film to be personally offensive. Dr. Mehr said that while some people may find the language in the film to be offensive, the language used is common among teenagers. He believed that it could be a positive experience for a teenager to see the film in the company of a parent or guardian, and added that he felt no difficulties would result if a child were to see the film without an adult.

Objections to questions seeking to compare two books with the film were sustained on the grounds of irrelevancy, and the books were not allowed into evidence. Dr. Mehr further testified that he was acquainted with certain programs appearing on public television in Chicago and containing scenes of frontal nudity and "street language," and that he did not consider such programs to be "unhealthy." He also stated that certain movies with a great deal of violence are "very, very offensive" and can cause more problems to children than the film in question.

On cross-examination, Dr. Mehr testified that there was nothing in the film that would appeal to the prurient interest of an average adult or adolescent, including a 10-year-old child. He stated that the film has social value in that it injects humor into sexuality and nudity and that it gives an adolescent or adult an opportunity to see the kinds of people involved in making pornographic films, although the film does not provide a positive role model for adolescents.

Dr. Mehr believed that most adolescents would understand that the film is a satirical comedy, but he also felt that not all children under the age of 18 years could understand the film. He further stated that the film was less likely to provide a positive experience for an adolescent if it was seen without adult supervision, and that it would be better if a child or adolescent could discuss the film with a parent after seeing it.

Sidney Kaplan, who operates the defendant company, testified that defendant distributes films in the Chicago, Illinois and Milwaukee, Wisconsin areas, extending into southern Illinois and small parts of Indiana and Michigan. Kaplan described the Motion Picture Association of America (MPAA) as an association composed of all major film production and release companies in the United States. The MPAA has established a film rating system which film exhibitors have voluntarily agreed to use as a guide in admitting patrons to their theaters. The four MPAA ratings are: (1) general audiences ("G"), admitting all ages; (2) parental guidance suggested ("PG"), where some material may be unsuitable for those under the age of seventeen; (3) restricted ("R"),

requiring persons under 17 to be accompanied by an adult; and (4) adults only ("X"), admitting no one under the age of 17 years. Kaplan testified that the film had received an "R" rating from the MPAA and documents were entered into evidence in support of that testimony. Kaplan further stated that he had discussed obtaining an "R" rating from the Board and admitted that the city could not enforce the "R" rating and that MPAA's enforcement of its rating system was not assured.

Patricia Wisniewski, a secretary and office manager for American International Pictures, testified that she had seen the film and that it should be given an "R" rating. On cross-examination, she testified that she had no professional background in the area of child psychology. Gregory Halik, a movie projectionist who sees two films per week, seeing each film 15 times, testified that the film should be rated "R". On cross-examination he stated that he does not enforce the MPAA ratings and knows of no theaters in Illinois that have been closed by the MPAA for failing to enforce its ratings system.

The film's writer, Bruce Kimmel, testified that the screenplay was written according to the MPAA's "R" rating guidelines and that it has been shown in over 60 cities with the "R" rating.

Following closing arguments, the trial court entered an order finding the film to be obscene when viewed by children and enjoining defendant from exhibiting the film in the city of Chicago to any persons under the age of 18 years.

Opinion

Defendant first contends that the ordinance does not meet due process requirements in that it does not require the Board to state the reasons for their denial of a general audience permit. Although defendant concedes that a record of proceedings before the Board is not constitutionally mandated, it maintains that the very absence of a record makes the need for a statement of reasons underlying its denial of a permit that much greater. We do not agree.

The standard for exerting prior restraints on motion pictures was set forth in *Freedman v. Maryland* (1965), 380 U.S. 51, 13 L. Ed. 2d 649, 85 S. Ct. 734, in which the Supreme Court held that only a *de novo* judicial determination that a film is not protected by the first amendment can justify a restraint on the film before its exhibition. If a censorship board reviews the film, it must do so within a specified, brief period of time after which it must either issue a license or go to the courts to enjoin the showing of the film. The State of Maryland subsequently enacted a new statute which provided for a final judicial determination within 15 days after the film was first submitted to the censorship board. This procedure has been upheld by the Supreme Court. *Star v. Preller* (D. Md. 1974), 375 F. Supp. 1093, *aff'd* (1974), 419 U.S. 956, 42 L. Ed. 2d 173, 95 S. Ct. 217.

The Chicago ordinance is similar to the Maryland statute. If a film is intended for distribution to general audiences in Chicago, it must first be submitted to the superintendent of police. Within two days after the film has been submitted, it must be viewed by the film review section and the police superintendent must grant or deny the permit. If the permit is denied, the film must be reviewed by the Board and the applicant for the permit shall have the opportunity to present testimony, statements or arguments in support of the exhibition of the film. Within three days after the hearing, the Board must serve notice of its decision. If that decision affirms the denial of the permit, the Board must, within the same three days, file an action for injunction against showing the film. General Order No. 3—3 of the circuit court of Cook County, as amended April 14, 1976, provides that all complaints for injunctions brought pursuant to section 155—7.2 of the Municipal Code of Chicago are to be placed at the head of the court call. The hearing must be held within five days of filing, and only recesses or continuances requested by the applicant-defendant will be allowed. The court must then render its decision within three days after the end of the hearing.

The procedure set out in sections 155—1 through 155—7.4 of the Municipal Code of Chicago, as re-enforced by General Order No. 3—3 of the circuit court of Cook County, takes a maximum of 18 days from the time the film is first submitted. At all stages, the burden of proof remains with the city and its representative agencies. At no time is an applicant faced with the burden of overturning an administrative decision. On the contrary, it is the Board, and the other agencies involved in the film review process, who must take the initiative at all stages. If they fail to do so, "the motion picture may be exhibited without permit or fees without violation of any of the provisions of this Chapter [155]." Section 155—7.3.

■■ Moreover, the requirement that the Board initiate the court action to enjoin the exhibition of the film carries with it the requirements that the Board's complaint notify the court and defendant of what it intends to prove, and that the Board then present such evidence to the court. Thus, rather than there being a review of the Board's decision based on speculation and conjecture, as defendant maintains, there was a *de novo* judicial determination in accordance with the procedures outlined in the ordinance. We therefore conclude that the ordinance meets the requirements of *Freeman v. Maryland* and does afford defendant due process protection.

Defendant further contends that the trial court committed reversible error by excluding defendant's evidence of contemporary standards in general and specifically by refusing to allow evidence of other films that the city of Chicago had allowed to be shown to general audiences.

Although defendant has not complied with Supreme Court Rule

341(e)(7) (Ill. Rev. Stat. 1975, ch. 110A, par. 341(e)(7)) by identifying disputed rulings on evidence and referring to their locations in the record, we have examined the record in full in order to consider defendant's specific claims regarding the trial court's refusal to allow other films into evidence.

We note first that defendant made no offers of proof following any of the trial court's rulings. Such offers are necessary to preserve the error claimed for review, for without an offer of proof this court cannot know what might have been shown had the evidence been allowed. (*Del Rosario v. Del Rosario* (1970), 133 Ill. App. 2d 8, 270 N.E.2d 160; *Schusler v. Fletcher* (1966), 74 Ill. App. 2d 249, 219 N.E.2d 588.) Furthermore, in examining the context in which defendant originally sought to introduce the films, we find that it is unclear whether the films were intended to be evidence of community standards or evidence of inconsistencies in the Board's decisions on various films. Thus, it is apparent that the offers of proof were necessary to remove the ambiguity as to the purpose and substance of the evidence and to allow for a decision based on more than speculation. (See, *e.g.*, *Pioneer Hi-Bred Corn Co. v. Northern Illinois Gas Co.* (1975), 61 Ill. 2d 6, 329 N.E.2d 228; *Peluso v. Singer General Precision, Inc.* (1977), 47 Ill. App. 3d 842, 365 N.E.2d 390.) We therefore conclude that defendant has not preserved this issue for review and will not consider it further.

■■ Defendant next contends that the ordinance is unconstitutional as applied in that the city allows films with general audience permits to be restricted by action of the theaters. Defendant maintains that the city's standard can be applied only if the city requires all film exhibitors who have been granted an unrestricted permit to admit general audiences.

We find this argument to be totally devoid of merit. Defendant concedes that the city has the authority to grant or deny permits to exhibit films on an "adults only" basis and that the definition of children as persons under the age of 18 is rational and bears a reasonable relationship to the evils sought to be prevented by the ordinance. Defendant further concedes that the city is under no obligation to recognize the MPAA ratings structure. Nonetheless, defendant maintains, in essence, that, because the city's two-tiered rating system does not here coincide with the MPAA rating, the city should therefore force all theaters to abandon the voluntary MPAA system. The MPAA is a voluntary organization of the film industry which adopted its own ratings classification system for motion pictures. It is an extra-legal system which operates without either the approval or disapproval of the city. The city is not required either to adopt the movie industry's standards or to enforce them. Furthermore, it cannot interfere with the MPAA ratings so long as the application of those ratings to films does not violate the city's standards as set out in the ordinance.

Defendant also raises the issue that the trial court applied a standard which is not allowed by the Illinois Supreme Court, citing *People v. Ridens* (1974), 59 Ill. 2d 362, 321 N.E.2d 264 (*Ridens II*), as its principal authority.

*Ridens II* involved the reconsideration, in light of the Supreme Court's decision in *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, of appeals of convictions under Illinois' obscenity statute. The Illinois statute defined obscenity according to the previously applicable test, set out in *Memoirs v. Massachusetts* (1966), 383 U.S. 413, 16 L. Ed. 2d 1, 86 S. Ct. 975, which necessitated, in part, a finding that "the material is utterly without redeeming social value." (383 U.S. 413, 418, 16 L. Ed. 2d 1, 6, 86 S. Ct. 975.) The definition of obscenity in *Miller* provided a less stringent standard, requiring a finding only that the material "lacks serious literary, artistic, political or scientific value." (413 U.S. 15, 24, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615.) The Illinois Supreme Court held, in *Ridens II*, that because the Illinois statute incorporated the stricter *Memoirs* standard, prosecutions brought under that statute would have to meet the heavier burden of the *Memoirs* test.

*Ridens II* does not require the application of the *Memoirs* standard in the instant case. The Supreme Court has recognized the justification for restricting the availability of obscene and near-obscene materials to minors. (See *Federal Communications Com. v. Pacifica Foundation* (1978), ___ U.S. ___, 57 L. Ed. 2d 1073, 98 S. Ct. 3026; *Ginsberg v. New York* (1968), 390 U.S. 629, 20 L. Ed. 2d 195, 88 S. Ct. 1274.) In *Ginsberg*, the Supreme Court upheld a conviction for selling to a minor a magazine which was admittedly not obscene if shown to adults. The conviction was sought under a statute which adapted the *Memoirs* standard to define obscenity with respect to minors, and the Supreme Court acknowledged the State's power to so adjust the definition of obscenity.

In the instant case, section 155—5 of the Municipal Code of Chicago in pertinent part reads:

"A. A motion picture is 'obscene when viewed by children' when taken as a whole it (1) to the average child, applying contemporary community standards, appeals to the prurient interest, (2) depicts or describes in a patently offensive way sexual conduct as defined herein, and (3) lacks serious literary, artistic, political, or scientific value. Each of these three elements shall be applied in terms of what the adult community judges is appropriate for children.

For the purpose of this section 'sexual conduct' means patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, or patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

The ordinance definition is based directly on the *Miller* standard, which is

the most recent definition of obscenity made by the United States Supreme Court. The State of Illinois has not expressed a community standard for the definition of obscenity with respect to children, either by statute or by case law. We therefore find that the definition as contained in the ordinance is constitutional under *Miller* and is not inconsistent with any standards set by the State of Illinois.

We turn now to defendant's contention that the trial court erred in refusing to take judicial notice that two members of the film's cast were the stars of what were then rated as the number one and two television programs in the country. Facts of which a court may properly take judicial notice are those facts which are in the common and general knowledge and are known to well-informed persons in the community so that they may be accepted by the court without proof. (*Cook County Department of Environmental Control v. Tomar Industries* (1975), 29 Ill. App. 3d 751, 331 N.E.2d 196; *Ashland Savings & Loan Association v. Aetna Insurance Co.* (1974), 18 Ill. App. 3d 70, 309 N.E.2d 293.) They must be "known and well established and authoritatively settled, not doubtful or uncertain." *Sproul v. Springman* (1925), 316 Ill. 271, 279, 147 N.E. 131, 135.

■■ The reputations of motion picture and television stars are not such facts. They are instead matters about which there may be widely varied opinions. Nor should the rank of the television programs in the ratings be noticed by the court. The source of the ratings was not identified. Moreover, ratings are generally made by different private companies, they fluctuate from week to week, and one company's ratings may differ from another's. Thus, these matters are not settled with certainty and are not within the common knowledge. We therefore conclude that the trial court properly refused defendant's request to take judicial notice of the reputations of the performers in the film.

Finally, defendant contends that the decision of the trial court was against the manifest weight of the evidence, basing its argument on the fact that there were more witnesses testifying for defendant than for the Board and that one of the defense witnesses was a highly qualified expert.

■■ The weight to be given to testimony is not determined by the number of witnesses who testify. (*B. F. Gump Co. v. Industrial Com.* (1952), 411 Ill. 196, 103 N.E.2d 504; *Greig v. Griffel* (1977), 49 Ill. App. 3d 829, 364 N.E.2d 660.) Nor does the fact that defendant's expert testified as to his conclusion on the ultimate issue of the case require the trial court to accept that opinion. *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 122, 273 N.E.2d 809; *Baikie v. Luther High School South* (1977), 51 Ill. App. 3d 405, 366 N.E.2d 542.

■■ We conclude that the record amply supports the findings of the trial court. The trial court viewed the film, which in itself is sufficient to meet the Board's burden of proof in this case. (See *People v. Ridens* (1972), 51 Ill. 2d 410, 282 N.E.2d 691, *vac. and rem. on other grounds* (1973), 413 U.S. 912, 37 L. Ed. 2d 1030, 93 S. Ct. 3046.) In addition, the court had before it the testimony of a member of the Board, who explained why, in his opinion, the film is obscene when viewed by children. The witness testified that the overall theme of the film is the making of a pornographic movie and that the language and several scenes in the film could be harmful to children, who are vulnerable, not sexually adjusted, and have a tendency to imitate what they see. Defendant's expert, on the other hand, testified that the film could be beneficial if an adolescent saw it with an adult and later had the opportunity to discuss it.

Defendant admits that it is not seeking to admit general audiences to the film. On the contrary, each of defendant's witnesses stated that the film should be given an "R" rating under the MPAA system which requires persons under 17 years to be accompanied by an adult. They also admitted, however, that the city's rating for general audiences does not require adult supervision in seeing a film, and, although defendant seeks a rating that would require that an adult accompany a child to the film, the city has no such rating. Defendant also admits that it cannot assure enforcement of a requirement that an adult accompany a child to the film and that the city has no proper means of enforcing such a requirement.

The trial court had the opportunity to see the film and hear the testimony of the witnesses before it decided that the film was obscene with respect to children and that a general permit should not issue. Our review of the entire record, including the film, does not convince us that an opposite conclusion is required. We therefore find that the decision of the trial court was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.