ANDREW GOTTER et al., Appellants, v. THE INDUSTRIAL COMMISSION et al. (Blinderman Construction Company, Appellee).

Fourth District (Industrial Commission Division)   No. 4—85—0664WC

Opinion filed February 13, 1987.—Rehearing denied March 31, 1987.

McCULLOUGH, J., dissenting.

Harlan Heller and C. Steve Ferguson, both of Harlan Heller, Ltd., of Mattoon, for appellants.

Douglas F. Stevenson, of Stevenson, Rusin & Friedman, Ltd., of Chicago, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Claimants, Andrew Gotter and Rex Bitner, filed applications for adjustment of claim under the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) for respiratory problems which

allegedly arose out of and in the course of their employment with respondent, Blinderman Construction Company. After a hearing conducted on September 14, 1982, an arbitrator awarded each of the claimants the sum of $394.20 for 44 weeks of temporary total disability (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(b)) and reasonable and necessary medical expenses (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(a)). On review, the Industrial Commission affirmed the medical-expense award but reduced each claimant's temporary total disability award to $394.20 for 7⁴/₇ weeks. On review, the circuit court confirmed the decision of the Industrial Commission. The claimants have perfected the instant appeal to this court.

The claimants raise four issues on appeal: (1) whether the Industrial Commission's reduction of claimants' temporary total disability awards was contrary to the manifest weight of the evidence; (2) whether the Industrial Commission erred in admitting a paint bucket label into evidence; (3) whether the Industrial Commission erred in taking "judicial notice" of the chemical composition of paint; and (4) whether alleged *ex parte* contact between respondent's counsel and one of the members of the Industrial Commission denied claimants a fair and impartial hearing. We conclude that the issue of the *ex parte* communication requires the reversal of the decision of the Industrial Commission; therefore, we need not address claimant's contention that the decision of the Industrial Commission was contrary to the manifest weight of the evidence. However, as certain evidentiary questions may arise again if the circuit court remands this cause to the Industrial Commission for a new hearing, these questions will be addressed. With the foregoing in mind, it is necessary that we recite the following relevant facts.

On November 9, 1981, claimants, union painters, were employed by respondent to spray-paint interior portions of buildings at the Mount Olive Housing Project in Champaign, Illinois. Upon arrival at the site, claimants were provided with paint, airless spray guns, and paper dust masks. Although respondents made charcoal respirators available to claimants, these respirators were inoperable (*i.e.*, the charcoal filters were "stopped up" and masks smelled of paint fumes). After claimants spray-painted for a short time, the spray equipment became inoperable and claimants spent the rest of the day preparing the walls for painting.

On November 10 claimants spray-painted for eight hours. They were provided with paper dust masks for respiratory protection. Although claimants painted on all three floors of the building, only one door on the first floor at the south end of the building was open for

ventilation. Claimants noted that the spray dust and fumes were "very heavy" and were not dissipating. Since he was feeling ill, Bitner examined the label on the paint container he was using. According to Bitner, the label indicated that 100% of the solids in the paint were polymers and that the vehicle for paint (*i.e.*, the liquid) was 27.5% ammonia and 16.5% aluminum chlorhydrate. Bitner allegedly told several other individuals that the entire contents of the paint were 27.5% ammonia and 14.5% aluminum chlorhydrate. The paint was a latex primer sealer. The claimants each experienced breathing difficulty, dizziness, and weakness in the limbs by the end of the day.

On November 11 claimants patched walls in the same building between coats of paint. They noticed that there were strong paint fumes and that the paint was still wet. They considered this to be unusual for a latex paint. Their symptoms persisted after the third day.

On November 12, while patching walls at the same location, claimants became ill. They left work early after informing respondent's foreman of their illness and their intention to seek medical attention. After they were examined by a physician on the same day, both of the claimants were admitted to the hospital. They were released from the hospital on November 23, 1981, and were released from the physician's care without restriction upon their employment activities on January 4, 1982.

Both claimants contended that their symptoms persisted through the proceeding before the circuit court and that, due to their exposure to the paint spray, they were still unable to work as painters. While we make no determination on the merits of these claims, we note that the expert testimony on this point was conflicting.

■■ Generally, a circuit court reviewing an Industrial Commission decision must consider the case solely on the record made before the Industrial Commission. (*Chambers v. Industrial Com.* (1985), 139 Ill. App. 3d 550, 552, 487 N.E.2d 1142, 1144.) Since the letter allegedly sent from respondent's counsel to an insurance claims supervisor regarding alleged *ex parte* communications between respondent's counsel and one of the members of the Industrial Commission was not admitted into evidence before the Industrial Commission, the substance of the letter would not ordinarily be before this court. Claimants, however, urge that they did not receive a fair and impartial hearing before the Industrial Commission because of such *ex parte* communication.

■■ Although the provisions of the Code of Civil Procedure and the supreme court rules are inapplicable to procedures regulated by section 19 of the Workers' Compensation Act (*Chambers v. Industrial*

*Com.* (1985), 132 Ill. App. 3d 891, 893, 478 N.E.2d 498, 499), section 19 does not authorize the entry of a decision by the Industrial Commission in violation of the principles of due process. (*Interstate Contractors v. Industrial Com.* (1980), 81 Ill. 2d 434, 438, 410 N.E.2d 837, 839.) Although we are unable to ascertain whether claimants raised the alleged due process violation in a timely manner (see *Head-On Collision Line, Inc. v. Kirk* (1976), 36 Ill. App. 3d 263, 268, 343 N.E.2d 534, 538), the issue was raised in the circuit court and it and the evidence upon which it is based are properly before this court. *Reich v. City of Freeport* (7th Cir. 1975), 527 F.2d 666, 671.

The letter respondent's current counsel sent to the insurance claims supervisor concerned claimant's motion to dismiss respondent's review before the Industrial Commission due to (1) respondent's failure to provide an authenticated transcript on review, and (2) the failure of respondent's counsel to appear at a June 29, 1983, hearing before the Industrial Commission due to a speaking engagement in Florida. The letter in question appears to have come into possession of counsel for claimants after the hearing before the Industrial Commission but before the proceedings before the circuit court when, in a Federal products liability suit against Iowa Paint Company, counsel subpoenaed the file of the employer's insurance carrier. The letter stated, in pertinent part, that respondent's attorney had to give a speech to the American Society of Safety Engineers in Orlando, Florida, on June 28 and that he discussed it with claimants' counsel and then took up the problem with one of the members of the Industrial Commission. Respondent's counsel's letter then stated that he formalized the discussions with opposing counsel in his letter of June 22 to the Commission member with a copy to claimants' counsel. The letter continued that counsel even discussed it personally with the Commission member and stated that the addressee of the letter can be certain that the Commissioner would not have dismissed their review, for he is a long-time member of the respondent's counsel's workers' compensation committee at the Illinois Manufacturers' Association and a good friend. The letter further stated that counsel had not figured out what happened on June 29 and stated that he wished that Attorney Thomas had remained quiet instead of volunteering. Pertinent to the instant appeal, the letter concluded that the Commission member had already assured counsel that he understood the reasons for his absence and would protect him in that respect, as he apparently did; that if Mr. Thomas had not intervened, he doubted that such Commissioner would have permitted any evidence to be presented; but that it was hard for him to resist the proposals of claimants' counsel when

someone purported to be there acting for Blinderman Construction.

■ After reviewing the contents of this letter we conclude that claimants have established a *prima facie* showing that they may have been deprived of due process. For that reason, we remand the instant cause to the circuit court for a hearing at which evidence relating to the alleged due process violation may be received and evaluated.

The following evidence was admitted regarding the contents of the paint to which claimants were exposed. Bitner testified that he was spraying "primer seal" when he became ill. Milton Gendry, president of the local painters union, testified that on November 12, 1981, he was informed by Gotter that Gotter and Bitner had been exposed to paint fumes at the Mount Olive Housing Project and they were being admitted to the hospital for tests. After being so informed, Gendry immediately went to the jobsite and contacted the job superintendent. Gendry went into one of the buildings which had been sprayed with a latex primer and noticed a strong ammonia odor. This odor caused Gendry's eyes to tear and caused a tightness in his chest. Gendry related that the odor was so strong that he did not want to breathe and that he wanted to leave the building. He noticed that the ventilation for the entire three story building was an open door on the first floor and an open skylight on the third floor. When Gendry returned to the site a few days later, he looked in a dumpster for a used container of latex primer. He found a five-gallon pail of latex primer bearing an Iowa Paint Company label. Although he took this pail into his possession, the pail and the label were misplaced and unavailable for inspection. Gendry thought the ingredients listed on the label included ammonia and that the lid on the pail bore the serial number 51581J077.

John Delaleurs, an employee of Blinderman Construction Company, was painting supervisor of the Mount Olive project in November 1981. Delaleurs testified that the paint used by claimants prior to their illness was labeled "Latex wall primer number 515." He further testified that in his 18 years as a painter and painting supervisor he had never head of "primer seal." Delaleurs stated that he was in the building where the instant alleged exposure took place while Bitner and Gotter were painting and that he did not detect any ammonia odor even though he was in the building for approximately 10 minutes without respiratory protection.

Mark Christopher Angerer, a chemist with the Iowa Paint Company, testified that at the request of Blinderman Construction Company he examined a sample of "One-O-Seal Vinyl Latex Wall Primer No. 515," batch no. 51581J077, which his company kept in storage.

He noticed no ammonia odor. Angerer testified that the pH reading of the paint he examined was a normal 7.4. He stated that the pH reading of a "paint" containing 25% to 27% ammonia would be 14, the highest reading on his pH gauge. Angerer stated that this particular paint never contains more than one gallon of a 25% to 30% water-ammonia solution per 2,000-gallon batch. We note that Mr. Angerer never testified as to what the pH reading would be if the paint vehicle, rather than the entire contents of the paint, were 25% to 27% ammonia.

Over claimants' objection, a label from "One-O-Seal Vinyl Latex Wall Primer No. 515 White" was admitted into evidence. The label on this paint mentions neither ammonia nor aluminum chlorhydrate as ingredients.

■ An evidentiary ruling of the Industrial Commission will not be disturbed absent an abuse of discretion. (See *Ansell v. Industrial Com.* (1981), 85 Ill. 2d 69, 73, 421 N.E.2d 179, 181.) In the instant case, painters union local president Milton Gendry testified that a few days after claimants' exposure, he obtained a latex primer paint container from the Mount Olive site. The paint was manufactured by Iowa Paint Company and the serial number was 51581J077. Iowa Paint Company chemist Mark Angerer testified that he examined a sample of One-O-Seal Vinyl Latex Wall Primer No. 515 from batch number 51581J077 at respondent's request. Although Bitner testified that he and Gotter used "primer seal" during their alleged exposure, admission of a label from a container of One-O-Seal Vinyl Latex Wall Primer No. 515 manufactured by the Iowa Paint Company was not an abuse of discretion.

■ ■ Finally, claimants contend that the Industrial Commission erred in taking "judicial notice" of the chemical composition of paint. In this regard, facts of which a court may properly take judicial notice are those facts which are in the common and general knowledge and are known to well-informed persons in the community so that they may be accepted by the court without proof. (*Motion Picture Appeal Board v. S. K. Films* (1978), 65 Ill. App. 3d 217, 226, 382 N.E.2d 103, 110.) While it is true that the Industrial Commission may have more expertise in matters such as the chemical composition of paint than this court, an Industrial Commission decision as to such chemical composition should be based on evidence presented so that the decision may be reviewed. Thus, it was erroneous for the Industrial Commission to take judicial notice of the chemical composition of paint.

For the foregoing reasons, the judgment of the circuit court is reversed and the cause is remanded to the circuit court of Champaign

for further proceedings consistent with the views expressed herein.

Reversed and remanded.

BARRY, P.J., and McNAMARA and WOODWARD, JJ., concur.

JUSTICE McCULLOUGH, dissenting:

The circuit court in reviewing an Industrial Commission decision must consider the case solely on the record made before the Industrial Commission. Items outside the record are not properly before the court. (*Chambers v. Industrial Com.* (1985), 139 Ill. App. 3d 550, 552, 487 N.E.2d 1142, 1144). The letter referred to by the majority which alleged an *ex parte* communication between attorney Stevenson and commissioner Miller was not admitted into evidence before the Industrial Commission and the substance of the letter should not be reviewed at this time. It is not a part of the record in this case.

The petitioners argue a constitutional right to present the issue of the *ex parte* communication. The issue was not raised in the trial court. The petitioners did not seek to admit the letter into evidence as an exhibit but rather attached the letter to its circuit court brief. Briefs are not evidence, and this court should not consider the substance of the letter.

A review of the proceedings before the Industrial Commission discloses no impropriety on the part of Commissioner Miller which is demonstrative of actual prejudice against the petitioners. The letter does not affect the outcome of this case. It does indicate that the Commission's action did not follow any *ex parte* understanding of attorney Stevenson. The letter was ill advised. However, any record with respect to the content of the *ex parte* communication was not presented to the trial court. If the employees' due process rights were violated, they were obliged to present the matter to the trial court. The letter shows no favored treatment given to the employer and no prejudice to the rights of the employees. This court should not consider an issue not presented to the trial court.

I agree with the majority that the Industrial Commission did not err in admitting the paint bucket label into evidence and that the Industrial Commission did err in taking "judicial notice" of the chemical composition of the paint. However, with respect to taking judicial notice, this was at the most harmless error on the part of the Industrial Commission. The Industrial Commission's decision and reduction of the petitioner's temporary total disability awards were not contrary to the manifest weight of the evidence. Dr. Brooks, the only expert

testifying that the petitioners were totally disabled after January 4, 1982, based his opinion upon a newly discovered occupational disease (RADS) which had not yet received general acceptance in the community of pulmonary specialists. Because of the speculative nature of RADS and Dr. Brooks' testimony that the petitioners had been treated by a Dr. Samet, a claim which Dr. Samet denied, we certainly cannot say that the Industrial Commission's decision to accept the medical evidence admitted by the respondents was incorrect. Dr. Paul and Dr. Cugell testified on behalf of the respondent and examined the petitioners on behalf of respondent. Dr. Paul testified that an asthmatic would usually recover from exposure such as Bitner encountered within a couple of weeks and believed that Bitner was currently suffering from a chronic condition which was not caused by the paint spray. Dr. Paul offered a similar opinion as to Gotter's condition. Dr. Cugell testified that his physical examination of Bitner on June 17, 1983, showed no abnormalities. After reviewing Bitner's medical history and X rays, Dr. Cugell formed the opinion that Bitner was suffering from chronic obstructive pulmonary disease and that this condition was developing prior to the exposure and is the type of condition which takes many years to manifest itself. With respect to Gotter, Dr. Cugell believed he was suffering from a chronic obstructive pulmonary disease of the asthmatic variety and that Gotter's condition was less severe than Bitner's. Additionally, neither Dr. Cugell nor Dr. Paul recognized Reactive Airways Disease Syndrome (RADS) as a distinct occupational disease. Bitner testified that he was treated by a Dr. Killgore and a Dr. John Nathan Savaans at the University of New Mexico Hospital. Dr. Brooks testified that he had referred the petitioners to Dr. Jonathon Samet at the University of New Mexico Hospital. A letter dated June 14, 1983, from Dr. Samet of the University Hospital states that neither he nor the hospital has any record of examining either petitioner.

From the record in this case, it appears that the Industrial Commission's decision with respect to these petitioners was certainly not against the manifest weight of the evidence.

The circuit court should be affirmed.