D. H. SPROUL *et al.* Appellants, *vs.* GEORGE SPRINGMAN
*et al.* Appellees.

*Opinion filed February 17, 1925—Rehearing denied April 14, 1925.*

1. DRAINAGE—*amendment of 1917 adding section 65a to Levee
act is valid.* The title of the act of 1917 adding section 65a to the
Levee act does not render the act void in that it recites that it is
an amendment of "an act to amend an act," as the insertion of
the words "to amend an act" is merely a clerical error, and the
section added to the Levee act is not unconstitutional in the pow-
ers authorized thereby. (*Maulding* v. *Skillet Fork Drainage Dis-
trict,* 313 Ill. 216, followed.)

2. SAME—*court may remove or appoint commissioner pending
continuance of cause.* Under sections 4 and 40 of the Levee act
the county court is authorized to remove or appoint a commissioner
after a continuance of the cause and prior to the time set for the
hearing of the report.

3. SAME—*objector must prove commissioner is a non-resident.*
Under section 6 of article 7 of the constitution a non-resident of
Illinois cannot be legally appointed to serve as a drainage com-
missioner, but an objection to drainage proceedings on the ground
that one of the commissioners is a non-resident must be supported
by proof.

4. SAME—*when objection because of interest of judge is un-
availing—venue.* An objection to the validity of a proceeding for
the organization of an outlet drainage district on the ground that
the judge before whom the proceedings were begun had an in-
terest in the case as a land owner is unavailing where the ob-
jectors participated in the proceeding before asking for a change
of venue, another judge being called in when the request was made.

5. SAME—*parties who have filed legal objections are not entitled
to new notices of amended petition.* An objection to a proceeding
for the organization of an outlet drainage district on the ground
that new notices were not given upon an amendment of the peti-
tion goes simply to the jurisdiction of the court over the parties,
and parties who have filed legal objections thereby enter their
appearance and waive further notice. ·

6. SAME—*court will not take judicial notice that the Kaskas-
kia river is navigable.* The Supreme Court will not take judicial
notice whether or not the Kaskaskia river is a navigable stream.

7. SAME—*proceeding for a drainage district is statutory.* The authority for a proceeding for the organization of a drainage district and the course of the procedure to be followed by the court are entirely statutory, and the court must follow the statutory provisions strictly.

8. SAME—*court may continue cause for any reasonable length of time.* In a proceeding to organize a drainage district the court must fix a day certain for the hearing on the commissioners' report or it will lose jurisdiction of the case, but there is no limitation as to the length of time the court may continue the cause for the report of the commissioners provided it is reasonable, and the continuance may, if necessary, extend over two or more terms of court.

9. SAME—*time for approval of plans by Department of Public Works.* The provision of the statute requiring approval by the Department of Public Works of the plans of a drainage improvement changing the natural course of a stream is satisfied if such approval is obtained after the drainage district is organized but before the work is begun.

FARMER, J., took no part.

APPEAL from the County Court of Fayette county; the Hon. WILLIAM C. KELLEY, Judge, presiding.

BROWN & BURNSIDE, for appellants.

WHAM & WHAM, and CRAIG & CRAIG, for appellees.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

This is an appeal from an order and judgment of the county court of Fayette county sustaining legal objections to and dismissing the amended petition of appellants, D. H. Sproul and others, for the organization of an outlet drainage district to be known as Okaw Valley Outlet Drainage District, under section 65a of the Levee act, added in 1917.

Under the original petition the proposed district was to embrace about 77,000 acres of land situated in the counties of Fayette, Clinton and Bond, the greater part of the proposed district being in Fayette county. It was represented

in the petition that there were certain drainage districts organized within the territory and that other lands not so organized would also be benefited by the proposed work. The improvement proposed by the petition was the widening, deepening and straightening of the Kaskaskia river from a point in Fayette county about three miles south of the Shelby county line to the city of Carlyle, a distance of about fifty miles. Judge Torrence, of the county court of Fayette county, fixed the date for the hearing on such petition as January 2, 1920. On motion of the petitioners the date for such hearing was re-set for January 17, 1920, and on that date the case was continued until February 14, 1920. On the hearing certain land owners appeared and filed objections. The court overruled the objections and found that the petition was in due form, signed by the requisite number of land owners owning the requisite amount of land, and that the proposed work was necessary and would be useful for drainage purposes. The court appointed three commissioners for the outlet drainage district and ordered that they make their report to the court on August 2, 1920, to which time the cause was continued for such report. On June 1, 1920, one of the commissioners resigned and the court appointed R. C. Stucker to fill the vacancy. On August 2, 1920, the commissioners applied for additional time to make their report, and the court extended the time until October 30, 1920. On October 30 the commissioners asked for further time, and the court extended the time to November 27, 1920, to which time the proceeding was continued. On November 27, on application of the commissioners, further time was granted to make their report to December 4, 1920, to which time the proceeding was continued. On December 4 the three commissioners filed their report in open court, recommending that the district be organized as prayed, to contain all the lands described in the petition and about 2000 acres additional, and further recommending that the Kaskaskia river be improved as prayed. The report

316—18

also contained an estimate of the cost of the improvement. The court then ordered that the commissioners give notice, as required by law, to the owners of the added lands and fixed the hearing on the report for December 31, 1920. After this report was filed a number of land owners appeared and filed their objections both to the report and to the organization of the drainage district. On December 31, 1920, the commissioners by leave of court filed an amendment to their report, and the hearing on the report was continued to February 4, 1921. On February 4 the commissioners filed their additional report, and the court ordered that all objections to the original and additional report be filed by February 19, 1921. On February 19 new and additional objections were filed by a number of land owners and default was entered against all parties not filing objections, and a hearing on the objections filed was set for March 28, 1921. On March 28 a petition was filed for a change of venue on account of the interest of Judge Torrence, and thereupon Judge Torrence entered an order that Judge Hubbard, county judge of Bond county, be called in to act as trial judge, and continued the cause to April 25, 1921, for the hearing of all objections. The record then shows that Judge Hubbard took charge of the case on April 25 and heard evidence from time to time and continued the cause for further hearing from term to term until the November term, 1922. On November 11, 1922, the petitioners amended their petition by leave of court, over the objections of the objectors residing in Fayette county, showing that the boundaries of the district were changed so as to exclude therefrom all the lands located in Clinton and Bond counties. After the amendment of the petition the commissioners filed an amended report, and to this report objections were filed and the cause was continued to March 3, 1923, for a hearing on the objections. This amended report was signed by only two commissioners, D. H. Sproul and James G. Hunt. The record shows that

Stucker resigned as commissioner July 21, 1921, and that Hunt was appointed in his stead. The last order that Judge Hubbard entered in the cause was on December 1, 1922, as his term of office expired in that month, and Judge Kelley, county judge of Shelby county, was called into the court to preside in this case in December, 1922, and entered all the orders that were entered in the cause after December 1, 1922. On March 3, 1923, the cause was continued by Judge Kelley for a hearing on the report of the commissioners to March 31, 1923. On that date he entered the final order, from which this appeal was taken, dismissing the petition, after sustaining two objections to the commissioners' report and to the organization of the district, to the effect that section 65a of the Levee act is unconstitutional and that the county court had lost jurisdiction of the cause by continuing it from February 14, 1920, to August 2, 1920, and overruling all other objections.

The first ground assigned for declaring that section 65a of the Levee act is unconstitutional is, that it does not provide that it amends the Drainage act actually in force but that it amends an act which has no existence. This objection is based upon a clerical error in the enacting clause of the statute. The enacting clause is in this language: "Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That an act entitled, 'An act to amend an act to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts, approved,' " etc. (Laws of 1917, p. 365.) It is very apparent from an examination of the entire act that the words found in the enacting clause, "An act to amend," were inserted by mistake, as it was the Drainage act itself which was intended to be amended and not an act to amend an act that was intended to be amended. The title of the act contains the correct language, which is

evidence of the fact that there was a clerical error in the enacting clause in the particular aforesaid. The title of the amendatory act is in this language: "An act to amend an act to provide for the construction," etc. It also appears from the title of the act that the act passed June 11, 1917, was an act to amend the act ordinarily referred to as the Levee act. It also appears from the language of section 65a that it was the intention of the legislature to amend or add a section to the Levee act. It is said in the case of *People* v. *Penman,* 271 Ill. 82, where the validity of an indictment was attacked on the ground that the title of the act under which it was drawn purported to amend a part of a chapter which did not exist in the act and was therefore invalid: "The rule for the guidance of courts in such a case is to ascertain the intention of the legislature, and not its mistakes either as to law or facts. The only question is, Has the legislature expressed its purpose intelligently? If it has, the act is valid and must be upheld." This act is clearly one to amend the Levee act aforesaid and is not subject to the objection interposed.

The consitutionality of this act was fully considered in *Maulding* v. *Skillet Fork Drainage District,* 313 Ill. 216, and all the objections raised to the validity of the act in this case that are not specifically answered in the case above cited are fully answered by the Levee act itself. The act specifically provides "that special assessments may be levied on the lands or other property included in said outlet district, and which will be benefited by the improvements or other work proposed in said outlet district in the same manner as assessments for benefits are provided in levee and drainage districts organized under this act, to pay the costs of constructing such improvements or other work, together with the cost of all proceedings therefor." These provisions authorize the district to assess all lands and property and all persons or corporations having property that may be assessed in an ordinary drainage district. The statute also

provides "that when it becomes necessary said outlet drainage district may acquire lands for right of way for any improvement constructed by it in the same manner as drainage and levee districts organized under this act may acquire right of way and may so acquire said right of way either within or without the boundaries of an organized drainage district theretofore organized;" also, "that no outlying drainage district organized under this section shall remove, destroy, appropriate or use any levee, drain, ditch or part thereof, or other work of any drainage district organized under any laws of this State without paying such drainage district just compensation therefor." These provisions give full authority and power to pay damages for lands taken and for damages to lands not taken for such purposes, and to take or damage any ditch or drain, etc., of a drainage district within its boundaries, but provides that it shall pay for such taking and damage. The legislature had the right and power to enact this legislation, and it presents no such difficulties or inconsistencies as contended for by appellees.

It is argued also by appellees that the attempted appointment of R. C. Stucker as commissioner on June 1, 1920, to fill a vacancy, was void because the cause had been continued from February 14, 1920, to August 2, 1920, and that after the February term that order was solidified whether it was valid or void, and no order could be entered in the cause until August 2, 1920. This proceeding was originally begun in the probate court of said county, and by the provisions of the statute the court is open at all times for probate business. This proceeding by no means comes under the head of probate business, but section 4 of the Levee act provides that the county court may hear and determine all matters pertaining to the organization of drainage districts at any probate or common law term, and may adjourn the hearing from time to time or continue the cause for want of sufficient notice or other good cause. Section 40 of the act provides that the court may, for good cause, at any time

remove or appoint a commissioner. The court is therefore open at any time for the appointment or removal of a commissioner.

It is also contended that Stucker was a non-resident of the State of Illinois and not competent to serve as a commissioner, and for that reason the report of the commissioners was void. Undoubtedly, under section 6 of article 7 of the constitution a non-resident of this State cannot be legally appointed to serve as a commissioner, but there is no proof in the record, by stipulation or otherwise, that Stucker was a non-resident, and appellees' objection is unavailable to them for want of such proof. Besides, the final report of the commissioners was signed only by the other two commissioners, and under section 8 of the Levee act a majority of the commissioners shall constitute a quorum, and the concurrence of a majority of the members in any matter shall be sufficient. We may further say that Stucker resigned long before the final report of the commissioners was made up or passed on by the court.

It is also argued that the entire proceedings are void because Judge Torrence was a land owner interested in the drainage district and had acted as the presiding judge in the case until the change of venue was granted by him. It was not stated in the motion for a change of venue what the interest of Judge Torrence was that disqualified him. It is stated by appellees that he was a land owner in the district, but the record fails to so show. Conceding, however, that he was a land owner and interested, appellees have waived all right to make any contention of this character by not earlier applying for a change of venue. Appellees have not shown in this case that they were actually prejudiced by the rulings of Judge Torrence, and even if they were, we are not disposed to permit them to avail themselves of such objection, which they failed, by choice or negligence, to make in apt time. We concede that no judge ought to sit on a case in which he is interested, but judges are oft

times called upon to do that very thing because the parties believe in their ability and integrity to rule justly and rightly. The court properly overruled this objection.

The report of the commissioners is not indefinite for any reason assigned by appellees. It complies in every particular with the provisions of section 9 of the Levee act. Neither has there been such a radical change in the proposed scheme that new notices should be given to the land owners. The objection that new notices were not given upon amendment of the petition goes simply to the jurisdiction of the court over the parties. Appellees all entered their appearance by filing their legal objections, thereby waiving any further notice. *North Richland Drainage District* v. *Karr,* 280 Ill. 567.

This court cannot take judicial notice that the Kaskaskia river is a navigable stream. It was not established as a navigable river by the laws of 1829, as contended by appellees, or by any other law, so far as we are advised. The act referred to by appellees only provides for dredging and cleaning it, and leaves it to the discretion of the commission as to how high up the stream that work should be done in aid of navigation. There is no proof of any character that this river is or was ever made navigable at the points where it is involved in this case. The matter of which a court will take judicial notice must be a matter of common and general knowledge. Such matter, to be a subject of judicial notice, must be known and well established and authoritatively settled, not doubtful or uncertain. (15 R. C. L. 1058-59.)

There was no discontinuance of this cause by reason of the order of the county court on February 14, 1920, continuing the cause to August 2, 1920, for the report of the commissioners. It is true that county courts are courts of limited jurisdiction in this State, and particularly as to matters pertaining to drainage and drainage districts. The authority for the proceeding and the course of the procedure

to be followed by the court are entirely statutory, and the court must follow the statutory provisions strictly. Section 13 of the Levee act provides that after the appointment of the commissioners the cause shall be continued by the court to a day for the filing of the report, and in the event the commissioners are not ready to report on the day fixed, they may appear before the court and obtain a continuance or continuances until the report is ready to be filed; but such continuance or continuances shall in each instance be to a day certain, and all persons interested shall take notice of any such continuance or continuances. It has been held by this court that the court must fix a day certain for the hearing on the commissioners' report or it loses jurisdiction of the case. (*Merkle Drainage District* v. *Hathaway,* 260 Ill. 186; *People* v. *Darst,* 265 id. 354.) The evident reason for the statute requiring that the day for filing the commissioners' report be continued to a day certain is that in drainage proceedings there are many parties, and the giving of further notice is avoided and all parties may know when the next proceedings are to be had without following the course of the court, as would be necessary if the hearing were continued generally from term to term and not to a day certain. Such a provision saves expense as well as the avoiding of additional notices. There is no limitation as to the length of time the court may continue the cause for the report of the commissioners. We hold that the only limitation we would be authorized to recognize is that the continuance by the court should not be for an unreasonable length of time, and the statute only implies such a limitation. There is no showing in the record that the time of postponement was unreasonable. In fact, the record demonstrates that it was not unreasonable, as the commissioners were not able to make their report before the time to which the cause was continued for such report.

This question has not been heretofore directly passed on by this court. In the case of *People* v. *Darst,* 285 Ill.

533, the commissioners were appointed on April 17, 1913, and the case was continued to July 25, 1913, for their report. There was no order of continuance from term to term, and the May and June terms of the court elapsed during the continuance. The case was a *quo warranto* proceeding against the commissioners of the district questioning their authority to act as commissioners on the ground that the district was illegally organized. The proceedings for the organization of the district were set up by plea to the information, and a demurrer was sustained to the plea. This court held that the plea set up facts showing the valid organization of the district and reversed the judgment and directed the lower court to overrule the demurrer. While the continuance over more than one term of the county court was not therein specially mentioned, the effect of that holding was that the statute had been complied with by continuing the cause for the commissioners' report to a day certain, notwithstanding the fact that the continuance extended over two terms of the county court. Our holding will be in this case that the court did not lose jurisdiction of the proceeding because of the adjournment or postponement.

Under the provisions of paragraph 75a of chapter 19, (Hurd's Stat. 1921, p. 176,) where the plans of any drainage district now or hereafter organized in this State involve any change in the natural course of any stream of this State, such plans must be submitted to the Department of Public Works and Buildings for approval before such district shall undertake any work under such plans. Such provisions furnish no legal objections to the commissioners' report and no legal grounds for dismissing appellants' amended petition. The requirements of said paragraph will be fully met if the approval of the plans of the proposed district by the Department of Public Works and Buildings be had after the approval of the commissioners' report by

the court, if it be approved, and after the district is organized and before the work under the plans is begun.

The judgment of the county court is reversed and the cause is remanded.          *Reversed and remanded.*

Mr. JUSTICE FARMER took no part in this decision.